All right, the next case of the morning is number 16-60211, Yvonne Bernabe Rodriguez Vazquez Vazquez v. Sessions, but you can get yourself settled at the council table. Ms. Waterhouse? Yes, Your Honor. Thank you. All right. May it please the Court. Petitioner Yvonne Bernabe Rodriguez Vazquez was admitted as a lawful permanent resident in October of 2007. In August of 2013, he was convicted of possession of a controlled dangerous substance under Oklahoma state law. Petitioner was later placed in removal proceedings, and as a result of that conviction, the government alleged that he was removable pursuant to AUSC section 1227A2BI. Based only on his conviction records and without reviewing the statute or conducting a categorical analysis, the immigration judge found that Petitioner was removable as alleged under the statute. Petitioner appealed to the Board of Immigration Appeals, arguing that his conviction could not categorically be a removable offense because the Oklahoma controlled substance statute at question was overbroad, indivisible, and controlled substances that were not federal controlled substances. Under the Malooly case, the Supreme Court tells us that to be removable for a controlled substance offense, the offense must be tied to a federally controlled substance. The Board of Immigration Appeals did not analyze the statute in their decision, but erroneously stated that a comparison of the drug schedules showed that they were identical. You know, I have a... What principle says that the categorical approach has to be applied strictly and rigorously to the identification of drugs in controlled substances statutes? I'm probably just, you know, baying at the moon, but it seems to me that when a legislature criminalizes controlled substances, the fact that they're very specific because each of those substances may carry a different range of punishments, they know what they're doing, and, you know, the fact that they overlap with specific drugs listed in the federal offense may ought to be, maybe ought to be the end of the story. Well, Your Honor, ultimately, that's why we have the categorical approach, because state statutes are drafted by state legislatures. They have different requirements. They may have different elements, and certainly the substances controlled by individual states may differ from the federal schedules. They're still highly identifiable. There's no question about common law meanings and, you know, shades of intent and is something beyond the scope of the common law and so on. I mean, you know, it's illegal to distribute cocaine. It's illegal to distribute marijuana. I'm just posing a hypothetical because it's probably been overruled somewhere, but... Well, Your Honor, I would say, you know, that's an issue that the Malooly Court had to look to. In Malooly, they were examining a state statute in which the schedules controlled substances that were not federally controlled. But because the immigration law specifically ties removability to a controlled substance that's listed in the federal schedule, so it's part of the definition at 1227, because of that requirement within the law, we must demonstrate and we must apply the categorical approach to show that a state statute ties the offense to a federally controlled substance. And, again, because of differences in drafting, a particular state statute may not give you, you know, the specificity that Your Honor seems to feel is inherent in most controlled substance statutes. Well, this particular – well, so I guess the first – maybe my problem is solved by divisibility, so I'm not trying to interfere with your argument, but... Yes, Your Honor. So the Board of Immigration Appeals did not make an argument as to divisibility of the statute or did not make it a finding as to divisibility of the statute. Rather, the Board of Immigration Appeals, again, purported to compare the controlled substance schedules, found that they were identical, which, again, was erroneous, and therefore did not proceed with an analysis of divisibility. However, they went on to assume, for purposes of their decision, that if the statute were, in fact, non-divisible, that the Petitioner still would not have met his burden under the realistic probability test that they had introduced in matter of fed AIDA. Now, Petitioner, of course, takes great issue with the introduction of that test as they don't believe that it's supported by case law. Now, on de novo review of the legal issues presented, the Court has to determine primarily the issue of whether this statute is indivisible and overbroad, and if it is, whether it's still subject to a realistic probability test. Now, Petitioner, of course, would urge the answer to both of those is no. This statute can be easily determined. You know, Mathis tells us that when there's a State court decision on the elements of a statute versus the means, on the divisibility of a statute, that our inquiry is easily resolved. They actually use the word easy. It's easy. The State court has already decided this for us. Now, in this case they they that's one of the more that's one of the more optimistic statements, isn't it? Absolutely, Your Honor, considering that we've been litigating the categorical approach forever. Forever. For longer than I've been a lawyer, actually. So in Oklahoma, the State statute is drafted in such a way as to be subdivided. So the statute in question is Title 63 of the Public Health and Safety Code, Chapter 2, Article 4, Section 2-402. And that statute provides three separate offenses that Petitioner does not argue are, you know, one offense. A1, A2, and A3 are clearly three distinct things that are set out in separate sections of the statute. But A1 is not further divisible. A1 says it shall be unlawful for any person, knowingly or intentionally, to possess a controlled dangerous substance unless such substance was obtained directly or pursuant to a valid prescription. So for our intents and purposes here today, the elements of that statute are knowingly or intentionally possession of a controlled dangerous substance. I thought Oklahoma law was very clear that you had to identify the substance in an indictment. Your Honor, Petitioner would disagree with that. Oklahoma State law and decisions of the Oklahoma Court of Criminal Appeals have found that substance is not an element of controlled dangerous substance offenses in Oklahoma. The government, in their brief, pointed to Watkins v. State. Now, Watkins, to be honest, addresses the statute directly preceding the one that Petitioner was convicted under. However, that statute is structured almost identically. It gives you the offense, the substantive criminal offense, which is the possession, the possession with intent to distribute. These are similar concepts. And it identifies only the controlled dangerous substance. The subsection or Part B of both statutes then goes on to discuss the punishment ranges based on whether it's in certain schedules or not. Now, in Watkins v. State, the Oklahoma Court of Criminal Appeals found that a person who possessed two different controlled dangerous substances at the same time was not committing two separate offenses, thus suggesting that the controlled substance identity is not an element of the statute, rather that any controlled substance will do. Therefore, it is a means to commit the offense. It is not an element of the offense. And although the Watkins decision is from 1992, it was reaffirmed as recently as 2006 in Lewis v. State. Now, the government has attempted to distinguish Watkins, arguing that it is inapplicable because it deals with double jeopardy issues. But as the Court said in Lewis v. State, as we explained in Watkins, the issue lies with the plain language of the statute in question, not with the applicability of double jeopardy or double punishment principles. So in a sense, the Oklahoma legislature had every opportunity to craft the statute in any way that they want. And even after being put on notice by their Court of Criminal Appeals that the statute was drafted in such a way as to not make the substance an element, they did not amend it. Do you know if juries assess punishments in Oklahoma? I apologize, Your Honor, but I do not know if the jury would assess punishment in this case. But clearly, punishment is the punishment range is tied to the identity of the drug, right? Well, the punishment range is tied to the drug schedule. There are a select number of drugs that are specifically listed in the punishment portion of the statute, for example, marijuana. That's separated out. Yeah, that's separated out. But the, you know, like there's a difference between crack cocaine and methamphetamine, right? Well, factually, yes, Your Honor. And there's also a difference in the punishment of those substances, right, at least depending on quantity or maybe just the identity of the drug. Well, Your Honor, no, not under the Oklahoma statute. The Oklahoma statute makes punishable possession of any Schedule I or II controlled substance. Well, I understand that, but I'll bet you go to jail longer for possessing methamphetamine than you do for marijuana or something else like LSD. Well, Your Honor, it would be dictated by what schedule they are on, not what substance they are. Accordingly, once again, Petitioner posits that the substance itself is not the critical element. The substance is a means of fulfilling one of the elements of the statute. Now, because the decision in this case ultimately has already been rendered by the Oklahoma Court of Criminal Appeals, our inquiry ends. You know, precedent tells us that there's no need to go into the other methods of divining whether this is or is not a divisible statute because the question is definitively answered by an authoritative state court. So in this instance, the government's arguments regarding divisibility ultimately are inapplicable. Moreover, many of the cases that the government points to are inapplicable for other reasons. Judge Jones, you mentioned marijuana, and we had a brief discussion about the fact that marijuana was named separately in the statute. Well, many of the cases that the government has cited for this proposition that the substance is an element deal with marijuana, which is delineated specially, separately in the statute. So in those possession of marijuana cases, clearly marijuana is an element. Again, it's a special substance under that statutory scheme. But those cases are inapplicable to whether Petitioner's offense would be considered to have as an element the substance that was possessed. Assuming that this Court finds that the Petitioner's offense is, in fact, indivisible and overbroad, we then reach the issue of the realistic probability test. Now, Petitioner would argue that the realistic probability test is not a requirement, that Duane S. Alvarez did not introduce this test that now binds us, rather that Duane S. Alvarez warned against the application of legal imagination. It was saying, look, here's this test. This is how you apply it. It's intended to produce fairness. It's intended to produce uniformity. But it's not intended for you to go into this legal flight of fancy, wherein you make up some offense that could potentially be punished under the statute, and then there would be no realistic probability of that offense actually being punished under the statute. However, there are numerous cases in Duane S. Alvarez that indicate that when the statute covers... Those Fifth Circuit cases? Well, Your Honor, yes. There are Fifth Circuit cases that say that. Most recently, in Judge Dennis' dissent in Castillo-Rivera, he gave a rather substantial list of cases. U.S. v. Chavez-Hernandez, U.S. v. Lopez de Leon, U.S. v. Martinez-Romero. In a dissent? Yes, but, Your Honor, the dissent was merely listing cases that had previously been issued by the court, wherein the realistic probability test was not applied. Assuming it applies, do we have — can you cite us any Oklahoma cases prosecuting these drugs that are not in the Federal statute, that are in the Oklahoma statute? Your Honor, I do not have a specific Oklahoma case. However, in 2008, the first arrest for possession of salvia, which is one of the substances that differs between the Oklahoma statute and the Federal schedules, the first arrest happened in North Dakota. So that same conduct in North Dakota, we'd be able to meet the realistic probability test. But in Oklahoma, because we don't have a State court decision that says, oh, this case is about salvia, that realistic probability test would be impossible to meet, which stymies the categorical approach in its pursuit of uniformity, the idea that equally situated persons should be treated the same based on a Federal generic. Well, depending on where you live in the country, that may not be true because there's a widely publicized prosecution for this in North Dakota, the very first one in the country, but there's nothing similarly publicized in Oklahoma. Is it a new drug? I mean, is it something that's just come out that was added to the statute recently? Your Honor, the statute was salvia divinorum specifically, one of these substances, was added to the statute in, I believe, 2006 in Oklahoma. However, as referenced in a respondent's brief, the DEA issued sort of a public notice regarding salvia divinorum in which they explained that they don't control it, but all of these other States do. And they noted that according to their statistics, since they started to collect them for salvia in 2011, they encountered law enforcement across the country, encountered 103 drug exhibits in 2011, 102 in 2012, and 40 in the first month of 2013 that were identified as salvia divinorum. So this is enforced. And there's no argument that Oklahoma has somehow less power to enforce their black-letter law than North Dakota does. Well, I find you a little inconsistent in arguing that realistic probability doesn't apply while at the same time arguing it doesn't matter what this substance is. Your Honor, I'm merely responding to essentially the decision of the Board of Immigration Appeals, which first said, you know, made this alleged divisibility analysis and found the statute, you know. Well, but I mean, I understand that. But you're taking the position that it doesn't matter what substance is charged because it's just a matter of the scheduling. And then you're saying at the same time that salvia is special and there's a real there, you know, so either realistic probability doesn't apply or salvia is expressly listed, therefore it can be charged. Your Honor, I apologize. Petitioner certainly didn't intend to make the argument in such a fashion. Rather, Petitioner's argument is that this statute is indivisible and overbroad. And because the Oklahoma schedules include substances that are not thoroughly controlled, it cannot be a categorical match for a removable offense. In the alternative, should the court determine to institute a realistic probability test, or as this is a decision that the court may be making, we argue against the institution of the test or the acceptance of the test that the Board has put forward, and also argue why the test would be inopposite to the categorical approach. Okay. Thank you. You have time for rebuttal.  Thank you, Your Honor. Ms. Mayhoff. Good morning, Your Honors. May it please the Court, Rebecca Nahas for the United States Attorney General. The Court should deny the petition for review because Castillo-Rivera's binding en banc precedent dictates that there is a categorical match between the state statute and the federal generic definition in this case. But even if there were no categorical match, the government prevails under Mathis because Oklahoma's drug statute is divisible as to drug type. Starting with Castillo-Rivera, the Court in that case held that the realistic probability approach applies, where like here, the statute is facially overbroad. In this case, there are two, at least two controlled substances in the Oklahoma schedule that are not federally controlled. Therefore, the Oklahoma schedule is broader on its face. However, Castillo-Rivera dictates that the defendant, excuse me, the petitioner must come forward with evidence that the Oklahoma, that Oklahoma actually prosecutes cases involving those two non-federally controlled substances. Suppose that this court were to do its appropriate research and come up with such prosecutions. That would suffice, would it not? Because it would just simply be research of the law to see what's there. I believe so, especially because it would be a de novo. I believe it would be a de novo review. That's what I was saying, yeah. So if we learn of such a case, then that's all that we need to decide here. Well, technically, Your Honor, the Supreme Court in Duenas-Alvarez and Moncrief suggested that the burden would be on the applicant to come forward with evidence of cases. But I believe that if, you know, the government did its own independent inquiry, and I think the court would likely do its own independent inquiry, and if there was evidence, perhaps the analysis would be different. However, in this case, the petitioners had years to come forward with such evidence, and relying on sort of national statistics of how other states have prosecuted is insufficient under Castillo-Rivera. But even if the court decides not to extend the realistic probability test, the government, in this case, the government prevails because the court may proceed to the modified categorical approach, consult the conviction record, and determine that, in this case, petitioner was convicted of possessing cocaine, which is federally controlled. And the reason that the court can proceed to the modified categorical approach is because the drug type in Oklahoma is an element. And I want to start with, in Mathis, the court said that there's several authoritative state law points that the courts can rely on. One is case law. Another is the face of the statute. And here, the face of the statute is set up so that subsection A lays out sort of the substantive provision of prohibiting possession of a controlled substance. And subsection B, as Your Honor, Judge Jones indicated, sets out different penalties that attach depending on the drug type. And the Supreme Court in Apprendi made clear that whenever there's a different penalty attached or an increase in penalty based on a fact, that fact must be an element that the jury decides beyond a reasonable doubt. And that approach also, I'm sorry, going back to the face of the statute, the Oklahoma Schedule of Controlled Substances lists the exhaustive list of all the controlled substances that are prohibited in the state. It's not an illustrative list. It includes the full universe of drugs that are prohibited in Oklahoma. And under Mathis, that is also an indicator of state authority, authoritative state law that would say that the drug type is an element. Moreover, another indicator that drug type is an element is the jury instructions in Oklahoma, which are binding, which have been adopted by the court and by statute, are binding on the courts in Oklahoma. And the jury instructions indicate that the jury must specify a controlled substance in the singular. This was a fact that the Ninth Circuit relied on in Martinez-Lopez, which I cite in my 28-J, to indicate that because the jury had to specify one controlled substance to the exclusion of all the others, then the jury had to agree on which drug was at issue in the case. So we have the face of the statute. We have jury instructions. And turning to the case law in Oklahoma, I believe that there is no definitive answer in the case law. I think that there are cases that go both ways. To start with Cox, the state said that the statement, I possess methamphetamine, was a factual basis for every essential element of the offense, including the specific element of the controlled substance. So we have a 2006 Oklahoma criminal court of appeal case telling us that the controlled substance, methamphetamine in that case, was an element. As the government indicated in its brief, we did find a case, Watkins, which may seem to go the other way. However, the government argues that Watkins is distinguishable for two reasons. One, because it's addressing a different question. It's addressing whether the Oklahoma legislature intended to punish the same defendant twice for transporting a single package that contained two drugs in it. And, you know, the court looked at the structure of the statute and said, well, subsection A lays out the substantive offense. And, therefore, because subsection A, which is the substantive offense, only uses the word controlled substance, the legislature couldn't have intended to punish the defendant twice for that single act. That doesn't answer the question here of whether the drug type is an element, whether the jury has to agree on which drug the defendant possessed. Moreover, Watkins may be based on an outdated framework. Watkins predated Apprendi. And the Supreme Court in Apprendi was very clear that any time a fact increases a punishment, it is an element that the jury must find beyond a reasonable doubt. And in Watkins, the court acknowledged that the defendant possessed cocaine and PCP and that cocaine carried a higher penalty than PCP. It acknowledged that because they are different schedules. And, nonetheless, the court said because the structure of the statute laid out a substantive provision and a penalty provision, it was the same offense. But did the BIA use the modified categorical approach in making its decision? No, Your Honor. The board didn't, and I believe the reason is that they weren't presented with the same argument that the petitioner raised before the court. So below, the petitioner argued all of these substances were controlled in Oklahoma, but not federally controlled. Well, it turns out the petitioner pointed to drugs that were federally controlled. So that's what the board was deciding. But in any event, the board is— Why are you arguing waiver? In other words, they argued before the board a different group of drugs than they argue here. There's no overlap. You're right, Your Honor. Assuming there's no waiver. The board's expertise is limited to the interpretation of the INA and not state statutes, and so the government believes that it would be proper for the court to decide this issue before the board. I mean, really, you know, the argument—this is a little messy, because one argument is that we couldn't use the modified categorical approach under SEC v. Schenry because the board didn't use the modified categorical approach. But the obvious response to that is the board didn't have to consider the modified categorical approach because the only drugs they argued about were those that are categorically covered in both statutes. Right. So we would be deciding on a false premise under Schenry if we say that the board—that's why we have exhaustion rules before the board. But in terms of the Schenry issue, I don't think that it would violate Schenry for the court to decide the issue in the first instance because it's an issue that the board does not have expertise over and is reviewed de novo. And so we believe that the court can decide this issue in the first instance. Well, I'm not sure that that's a full response, but that's certainly one response. So turning back to the state law in Oklahoma, I believe that it is not definitive. We have cases. We have an outdated case, Watkins, that seemed to apply the McMillan framework and not the Apprendi framework. And then we have Cox v. State along with several other cases that suggest that drug type is an element. And Mathis said that if the authoritative state law doesn't tell you the answer, then you should look at the conviction documents in the record for a peak as to how the prosecutor in fact charges these types of cases. And, in fact, Mathis said that often the conviction record will be better than state law, will reveal better than state law whether the fact is an element or a means. And here we have an indictment, or excuse me, I believe it was a complaint, that charges the petitioner with possessing cocaine to the exclusion of all the other drugs. And, therefore, that is indicative under the Mathis analysis of the drug type being an element and not a means. Just for the sake of candor, we had a bench memo in this case, and the bench memo cites an alleged prosecution of Salvadoran A in a case called Oklahoma v. Thomason, docket number CF-2011-183, Oklahoma District Court, April 4, 2011. Well, Your Honor, we still have... Okay, so I did an independent search, and I didn't find anything. However, if... That might have been a charge, and maybe they pled out to something else. I don't know. I haven't gone beyond what the citation was. All right. Well, I believe that the court doesn't really need to decide whether the realistic probability test applies in these types of cases because I think that the Mathis issue, the modified categorical approach, absolutely applies, and we can consult the conviction record, which shows that the petitioner was convicted of possessing a federally controlled substance. Okay. All right. Unless the court has any other questions. Thank you, Your Honors. Thank you, Your Honor. Okay. So... Well, let's start with the first things first because you argued an entirely different group of allegedly controlled substances to the BIA. I don't know if it was you, but somebody did, than are argued before us. Yes, Your Honor. If I may, I was not petitioner's counsel in front of the Board of Immigration Appeals and, in fact, took this case on as a pro bono matter after the appeal was dismissed by the Board. The government primarily is not arguing that a waiver was made of this claim. Moreover, petitioner would posit that the claim was not waived before the Board. The petitioner's former counsel may have misidentified the particular substances that were non-generic or non-federally controlled, but the Board was still on notice that there was an argument being made that this was an overbroad statute, and the Board purported to engage in their own de novo comparison of the controlled substance schedules. And the Board themselves, the members who looked at this case, made a similar error. They failed to find what the government readily admits are substances on the Oklahoma statutes that are not controlled federally. But I do have to say, though, we apply the exhaustion rules as rigorously to the BIA, probably more rigorously than we do in any other administrative context, and it seems to me a very big thing because you can't hang the BIA for applying the categorical approach alone when that was all they were called on to do by the arguments of counsel. Well, Your Honor, petitioner would respond that, first of all, there is an issue with the fact that in this case, no argument was ever put forward concerning... Excuse me. The clock isn't working. Oh. Well, it's a little late. Well... You can cut me off whenever you like, Your Honor. I think you only used about a minute at the most, but... Petitioner finds it quite troubling that in this matter, no substantive argument was ever made by the government that this statute was divisible, that a real estate probability test applied... No, because they didn't have to, because under the rules before the Board, you have to state your precise arguments, and all they had to respond to was a list of substances that are clearly Schedule II or whatever they are under the federal law as well. But if the overarching argument, Your Honor, was that the schedules were not a match, then the Board was on notice of the argument that the petitioner was making. Well, the Board doesn't have to respond to arguments that are theoretical and not presented to it. I mean, if you held us to that standard, we would be deeply embarrassed on some occasions. Your Honor, prior counsel did, in fact, attach copies of the Oklahoma controlled substance schedules and a copy of the statute and did as much as possible to preserve this argument while, you know, admittedly, erroneously identifying some of the substances that were non-generic matches. However, again, Petitioner would urge the Court that at the beginning of this case, you know, it is the government's burden to prove that a petitioner or a respondent in immigration proceedings is removable. And yet in this case, the government filed nothing but the conviction documents. They never filed a copy of the statute.  At the Board of Immigration Appeals, the government filed a motion for summary affirmance. At no point did the government have to prove that this was a divisible statute, that it was a categorical match, yet the petitioner is forced to prove the negative. The petitioner is forced to prove that he's not removable. The realistic probability test takes this a step further, requiring the petitioner to engage essentially in fact-finding for the Court. These burdens do not belong to the petitioner. These burdens belong to the government, and they have been erroneously placed on petitioners in proceedings of this nature. So, yes, Petitioner's prior counsel failed to argue the specific substances, but Petitioner's prior counsel did in fact identify that there was a problem between the Oklahoma schedules and the Federal schedules, and that put the Court on notice of the argument. And, of course, because the issue is de novo before the Board, and, again, a purely legal question, which is de novo before this Court, I do not believe that any waiver could possibly come into play that would prevent this Court from determining if this particular statute, as a question of law, is a categorical match for a Federal-controlled substance. Well, if you'd like to, since you're doing such a good job for your client, if you'd like to file a 28-J letter with a couple of citations to support your argument of non-exhaustion, I'd appreciate it. Absolutely, Your Honor. A final point of rebuttal, Your Honor, Your Honors, is that the government has pointed out that Watkins v. State, the case that Petitioner believes definitively identifies this statute as nondivisible, is a case from 1992, and it was pre-Apprendi. However, as Petitioner pointed out in their argument in chief, there was a case as Petitioner with this admonishment to the legislature. But doesn't their distinction make a lot of sense that Watkins is talking about transporting, and if you have both of the substances and you – in other words, you only had to prove one to convict the defendant of transporting, right? Yes, but, Your Honor, if each substance was an element of a separate offense, then that person who in Watkins was charged with two different offenses would have been guilty of two separate offenses. But what the court found is that the substances were not elements. Therefore, if you were defending a person in Oklahoma criminal court and they were charged with transporting a controlled substance, you do not think that the government would be required to prove exactly what controlled substance it was? Your Honor, I think – Cocaine, PCP, LSD, Salvinorin, and so forth? You don't think that would have been required to be proved? The government would just say, here's this brown, strange-looking stuff. It's a Schedule II substance. Take our word for it. Your Honor, I believe that the government may prove the substance as a factual predicate for the element of possession of a controlled, dangerous substance. And, you know, Justice Alito's dissent in Mathis really speaks to this, which is that State rules and practices regarding charging documents frequently, although they may not be an element of the statute, they allege factual basis to meet the elements of the statute. And pointing to the particular instance in Mathis, Alito points out that Petitioner had five prior burglary convictions, and yet in all of those charging documents it specified house, garage. It specified what location was alleged to have been burglarized, even though the court tells us. Okay. You've gotten more than enough time. Yes, Your Honor. You've had five minutes in addition to another minute. So, anyway, since you're pro bono, we appreciate your service. You've done an excellent job advocating for your client. Thank you very much, Your Honors. Pleasure meeting you. All right.